2018 IL App (2d) 180247
No. 2-18-0247
Opinion filed September 14, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| ANTHONY D. PERADOTTI, | ) | of Lake County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | No. 15-D-2077 |
| and | ) | |
| | ) | Honorable |
| MICHELE PERADOTTI, | ) | Joseph V. Salvi and |
| | ) | Diane E. Winter, |
| Respondent-Appellee. | ) | Judges, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices McLaren and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1     In the course of this dissolution proceeding, petitioner, Anthony D. Peradotti, brought a petition to substitute the Honorable Joseph V. Salvi out of the case for cause. The Honorable Diane E. Winter heard and denied the petition. Judge Salvi proceeded to adjudicate the action and issue a dissolution judgment. We agree with petitioner that Judge Winter erred in denying the petition for substitution. Consequently, we reverse the denial of the petition, vacate the dissolution judgment, and remand for the assignment of the case to a different judge.

¶ 2                                   I. BACKGROUND

¶ 3     Under Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), the appellate court must, unless good cause is shown, issue its decision in a subject accelerated appeal within 150 days

from the filing of the notice of appeal. Under that timetable, our decision was due August 30, 2018, but good cause exists for not meeting the deadline, due to the extensions of time we granted the parties to file their briefs. The extensions totaled 60 days.

¶ 4 Petitioner filed his dissolution petition in November 2015. That same month, an appearance was entered for respondent, Michele Peradotti, by the law firm of Beermann Pritikin Mirabelli Swerdlove LLP (the Beermann firm). The case was originally assigned to the Honorable Christopher B. Morozin and later reassigned to Judge Salvi.

¶ 5 On March 3, 2017, petitioner filed, pursuant to section 2-1001(a)(3) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1001(a)(3) (West 2016)), a petition to substitute Judge Salvi out of the case for cause. Petitioner supported the petition with the affidavit of attorney Jeffrey S. Braiman. In his allegations, petitioner recounted how Judge Salvi had recused himself from the case based on his nephew's employment as an associate with the Beermann firm, and how Judge Salvi later rescinded the recusal and placed himself back on the case. Specifically, petitioner alleged:

"7. The Honorable Joseph Salvi, an experienced trial judge, known and respected for his integrity, legal knowledge, honesty and dedication to the law, having previously been in a private practice for many years in addition to his approximately five years on the bench as an Associate Judge for the County of Lake[,] is assigned to the dissolution proceeding.

8. The Salvi family is well known throughout the County of Lake and the State of Illinois and most likely nationally for their dedication of the law. Multiple family members are lawyers.

9. Judge Salvi's wife is a practicing attorney in Lake County specializing in various areas of law one of which [is] matrimonial law, specifically representation of clients in divorce and representing children as a guardian *ad litem* and child representative.

10. Judge Salvi has a sister who is a practicing attorney in Lake County. She is married to a practicing attorney in the County of Lake. This specific brother in law is the former law partner of Judge Salvi for many years, having a successful law practice located in Lake Zurich, Illinois prior to being appointed as an associate judge in Lake County.

11. Her husband, Judge Salvi's brother-in-law and former law partner also specializes [in] family law and practices in the family law courts in Lake County.

12. Judge Salvi's sister specializes in a few different areas of the law, one of which is matrimonial law, specifically representation of clients in divorce and representing children as a guardian *ad litem* and child representative.

13. It is well known in the County of Lake that these family members do not practice in front of Judge Salvi as Judge Salvi has recused himself from cases involving his family members.

14. This particular sister and brother-in-law of Judge Salvi, have a son who is also a practicing lawyer in Lake County, specifically practicing in the field of matrimonial law.

15. Judge Salvi's nephew is within the third degree of relationships as contemplated in [Illinois]Supreme Court Rule 63(C)(1)(e) [(eff. Feb. 2, 2017)]. He is a second degree relative.

16. Their son, Judge Salvi's nephew, began his legal career at a firm called Ventrelli/Simon from approximately 2015 to approximately January of 2017. Ventrelli/Simon is a matrimonial law firm that practices in Lake County. During the time that he practiced family law with Ventrelli/Simon, it was well known to the legal community that Judge Salvi generally did not allow his nephew or his nephew's firm to appear in front of him during the years of 2015, 2016 and the beginning of 2017.

17. On or about January of 2017, Judge Salvi's nephew left the firm of Ventrelli/Simon and advanced his career as an associate with [the Beermann firm].

18. This firm represents [respondent]. They also represent [respondent] in post-decree litigation in Cook County from a previous divorce and at the Appellate level in the 1st District Appellate Court of Illinois.

19. On February 10, 2017, in open court, Judge Salvi disclosed to all parties that his nephew was now working at [the Beermann firm] and he recused himself; entering an order assigning the case to the Honorable Elizabeth Rochford.

20. Thereafter, counsel for [respondent] objected and asked Judge Salvi orally to review the law and reconsider recusing himself in this case (there is no legal basis for an attorney's objection to a Judge's discretionary decision of recusal). [Petitioner's] former attorney objected to the 'objection'. See affidavit from Attorney Jeffrey S. Braiman attached and incorporated by reference into this petition as Exhibit A.

21. Twelve (12) days later, on February 22, 2017, the matter came before the court for pretrial. New counsel for [petitioner], David R. Del Re, brought up the issue of the conflict and recusal and at that point, Judge Salvi said (not verbatim), I have

researched the law, I have spoken with our Chief Judge and I am not obligated to recuse myself and I am not recusing myself."

In his affidavit, Braiman averred that (1) he was petitioner's former counsel; (2) he "was present in court in February 10, 2017 wherein Judge Salvi disclosed to all parties the nature of the conflict and recused himself and entered an order assigning the case to the Honorable Elizabeth Rochford"; and (3) "[t]hereafter, counsel for [respondent] asked Judge Salvi orally to review the law and reconsider," to which Braiman objected.

¶ 6    Petitioner argued that Judge Salvi's impartiality in the case was questionable due to his departure from his "long-standing history of *** recusing himself when cases involving his nephew's firm appear before his bench."   Also, by rescinding his recusal, Judge Salvi raised "serious, legitimate, objective and reasonable concerns that in the twelve days between February 10, 2017 and February 22, 2017, somehow, someway, some outside influence changed the inherent, innate, intimate and independent recusal made by Judge Salvi."

¶ 7    The record contains no report of proceedings of any hearing on February 10 or 22, 2017, or any order of recusal or reinstatement by Judge Salvi.   However, respondent, in her written response to the petition, and at the hearing on the petition, agreed to the essential facts alleged by petitioner, as we elaborate below.  *Infra* ¶ 18.

¶ 8    Respondent attached to her response documents from the Beermann firm purporting to show that Judge Salvi's nephew—identified for the first time in the case as Charles Wifler—was screened from involvement in the parties' dissolution action.

¶ 9    The petition was assigned to Judge Winter for decision.   At the hearing, the parties disagreed over whether Judge Salvi actually entered an order of recusal on February 10, 2017, but they agreed that Judge Salvi did indeed transfer the case to Judge Rochford on February 10.

According to respondent, no order of recusal was entered or even drafted, but according to petitioner, a recusal order was entered and later removed from the court file. We note that the circuit court electronic docket entry for February 10 reflects that no order was entered on that date.

¶ 10    At the hearing, petitioner reiterated the arguments in his petition and also presented two new arguments. First, petitioner claimed that it was improper for respondent's counsel to ask Judge Salvi to reconsider his decision to recuse, as counsel challenged "Judge Salvi's inherent right to use his discretion and recuse himself." Second, petitioner claimed that Judge Salvi, once recused, had no authority to continue in the case, even to reconsider the recusal:

> "Once that order is entered, which it was signed, how does Judge Salvi have the ability to then vitiate that order? How does he now, when he has recused himself and it is assigned to a new judge, have the jurisdiction to say, okay, on your oral motion, counsel, I am going to rip up that order because that's what happened?"

¶ 11    Judge Winter found "problematic" the absence of a recusal order in the court file:

> "[Y]ou can't take back something that has already been done. Everything needs to be in the record. *** [T]he order, if it was, in fact, entered, should be in the file even if it is vacated later so there is a good record of what has happened in a case."

¶ 12    Judge Winter proceeded to deny the petition for substitution. She found that petitioner failed to meet the "actual prejudice" standard of *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 31.

¶ 13    Judge Salvi presided over the case through trial. In December 2017, he issued a judgment dissolving the parties' marriage and addressing such matters as parenting time and

property distribution.  Petitioner filed a motion to reconsider, which was denied.  Petitioner then filed this timely appeal.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, petitioner challenges (1) Judge Winter's denial of petitioner's petition for substitution of Judge Salvi for cause; and (2) the substance of the dissolution judgment later entered by Judge Salvi.  For the following reasons, we agree that the denial of the petition was erroneous.

¶ 16    The trial court's decision on a petition for substitution for cause will not be disturbed on appeal unless it is against the manifest weight of the evidence.  *Levaccare v. Levaccare*, 376 Ill. App. 3d 503, 509 (2007).  Petitioner presents two main reasons why the denial of his substitution petition was erroneous.  First, he claims that Judge Winter, in deciding the petition, misapplied *O'Brien* by determining whether Judge Salvi was actually prejudiced against him rather than merely potentially prejudiced.  Second, petitioner argues that, once Judge Salvi recused himself, he lost authority over the case and could be reinstated only through a remittal from the parties pursuant to Illinois Supreme Court Rule 63(D) (eff. Feb. 2, 2017), which Judge Salvi never obtained.  We agree with the second point and therefore need not address the first one.

¶ 17    Before proceeding with our analysis, we recognize that the record contains no report of proceedings, or orders, in which Judge Salvi recused or reinstated himself.  Based on this omission, respondent claims that the record is inadequate to support petitioner's contentions. Regarding Braiman's affidavit describing what occurred on February 10, 2017, respondent cites authority stating that "[a]n attorney's affidavit cannot be used to supplement the record in lieu of a transcript or a bystander's report" (*Landau & Associates, P.C. v. Kennedy*, 262 Ill. App. 3d 89, 91 (1994)).  Respondent also denies that she admitted the facts alleged in the petition for

substitution. According to respondent, she attacked the sufficiency of petitioner's allegations without admitting them. This is not quite true. For instance, if respondent was taking no position on whether or why Judge Salvi recused himself, why would she produce documentation from the Beermann firm trying to establish that Wifler had no involvement in the case?

¶ 18 Regardless of whether respondent made factual concessions in her written response, her counsel agreed at the hearing to the essential allegations of the substitution petition. We note particularly these comments by respondent's counsel:

"[I]t is not relevant what was in Judge Salvi's mind when he concluded I am not recusing myself. This is not something I feel I have to do. He made that decision.

*** [T]his was a matter of weeks after [Wifler] joined the firm and he says I have to recuse myself because I have always done that. First of all, that is not any kind of precedential standard. Maybe why he did that and, again, we are all sitting here speculating as to what is in Judge Salvi's mind, which I don't think is appropriate under the law, but the fact of the matter is [petitioner's counsel] says what's the difference between [the Beermann firm] and Simon and Ventrelli [(Wifler's former firm)]. There is a big difference.

* * *

No order was entered. The docket says that. Judge Salvi came back. And when we re-approached, he had gone through an analysis. He articulated, and I agree with [petitioner's counsel's] assessment of that, and we are paraphrasing. Essentially he said I talked to Judge Ortiz. I looked at this. I researched it. He probably looked at Rule 63 and said do I really have to do this[?]

*** Once he comes out and says I have done that, I have done my Rule 63 analysis, I do not believe there is a conflict, I am not recusing myself, [petitioner] has the right to come in and ask your Honor to still disqualify Judge Salvi for cause. ***"

Later, counsel argued:

"[I]n that moment, without really walking himself through this [Judge Salvi] said, well, I have always done this with Simon and Ventrelli, it is a different circumstance. Let me talk to Judge Ortiz. Let me actually look at Rule 63. Let me do that analysis. Let me, in effect, go through and walk through all of the facts and circumstances of these issues.

He has done that. He has done that. He has the right to do that. Whether or not there was an order, the record reflects there wasn't. If his knee jerk response was, you know, I have to recuse myself because I always did it when [Wifler] was with Simon and Ventrelli, but wait a minute, [respondent's counsel] steps up and says, Judge, as a matter of law, we don't think you have to do that. He says, well, let me take it under advisement. He goes back. And like [petitioner's counsel] said, 10 days later, 12 days later, whatever, we come back. He has done his analysis."

In the foregoing argument, respondent's counsel agreed that (1) Judge Salvi announced in court that he was recusing himself because Wifler was employed with the Beermann firm; (2) when Judge Salvi announced his recusal, respondent's counsel asked him to reconsider; and (3) several days later, Judge Salvi announced in court that he had consulted with Judge Ortiz, the chief judge, and decided to rescind the recusal.

¶ 19    Having determined the agreed facts, we proceed to state the applicable law. Subsection (C)(1) of Rule 63 states that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to" the

situations specified in the subsection. Ill. S. Ct. R. 63(c)(1) (eff. Feb. 2, 2017). Subsection (C)(1)(e)(ii) of Rule 63 describes a situation corresponding to the facts here, namely where "the judge ***, or a person within the third degree of relationship to [him] *** is acting as a lawyer in the proceeding." Ill. S. Ct. R. 63(C)(1)(e)(ii) (eff. Feb. 2, 2017). A niece or nephew of a judge is a person within the "third degree of relationship." Ill. S. Ct. Code of Judicial Conduct, terminology. Subsection (D) of Rule 63 specifies a remittal process by which the parties may waive disqualification:

> "D. Remittal of Disqualification
>
> A judge disqualified by the terms of Section 3C may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive disqualification. If following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. This agreement shall be incorporated in the record of the proceeding." Ill. S. Ct. R. 63(D) (eff. Feb. 2, 2017).

There is nothing in the record to suggest that the parties waived disqualification with respect to Wifler's employment with the Beermann firm.

¶ 20    The issue at hand is whether Illinois law permits a recused judge to reinstate himself to a case absent a Rule 63(D) remittal. Respondent claims that *People v. Kirkpatrick*, 240 Ill. App. 3d 401 (1992), "squarely addressed" this issue. We read that case differently. The trial judge in *Kirkpatrick* did rescind his recusal, and the defendant did claim on appeal that the judge lacked the authority to reinstate himself regardless of whether the recusal was warranted, but the

appellate court summarily rejected that claim because the defendant cited no authority for it. *Id.* at 406. *Kirkpatrick* provides no guidance here.

¶ 21 More helpful is *Brzowski v. Brzowski*, 2014 IL App (3d) 130404, cited by petitioner. *Brzowski* was a marriage-dissolution proceeding in which Judge Kennison issued an order of protection against the respondent. The respondent filed a motion to dismiss the entire proceeding, but before the motion was heard, Judge Kennison recused herself. The record did not indicate the basis for the recusal. Judge Baron reassigned the case to Judge Anderson, who struck the respondent's motion to dismiss. The respondent subsequently filed a petition for substitution, alleging that Judge Anderson was biased against him. Judge Baron ultimately assigned the case back to Judge Kennison, who granted the petitioner's motion to extend the order of protection. Judge Kennison did not obtain a Rule 63(D) remittal from the parties before she was reinstated to the case. *Id.* ¶¶ 8-12, 20.

¶ 22 On appeal, the respondent argued that the order extending the order of protection was invalid because Judge Kennison had, by recusing herself, relinquished authority over the case in the absence of a Rule 63(D) remittal. The appellate court considered the issue "novel" because it found no "reported Illinois case specifically addressing the validity of an order entered by a judge who had previously recused herself." *Id.* ¶¶ 17, 19. The court found guidance in cases addressing what power remains with a judge once he is substituted out of a case for cause under section 2-1001(a)(3) of the Code. *Id.* ¶ 19. The court specifically mentioned *In re Estate of Wilson*, 238 Ill. 2d 519 (2010), and *In re Petition of C.M.A.*, 306 Ill. App. 3d 1061 (1999).

¶ 23 *C.M.A.* was an adoption proceeding in which the petitioners brought a petition under section 1001(a)(3) of the Code to substitute Judge McDunn out of the case for cause. Judge Barth heard the petition, granted it, and reassigned the matter to himself. Later, Judge McDunn

entered orders *sua sponte* declaring that Judge Barth lacked jurisdiction to decide the petition and that his orders in the case were void. Judge McDunn also made a substantive finding about the sufficiency of the evidence on the underlying issues in the case. *C.M.A.*, 306 Ill. App. 3d at 1065-66. On appeal, the petitioners argued that Judge McDunn had no authority to enter orders after she was removed from the case. In beginning its analysis, the appellate court stated the following principles:

> "Illinois law firmly establishes that once a motion for substitution of judge for cause is brought, that judge loses all power and authority over the case, and any orders entered after a judge's removal or after an improper denial of such motion are of no force or effect. [Citations.] Thus, a judge who had been removed from a case for cause has no jurisdiction to enter enforceable orders in that case. Any attempt by the removed judge to rule in such a matter is futile, rendering void all orders entered by that judge after substitution for cause." *Id.* at 1067.

The court agreed with the petitioners that Judge McDunn was properly removed for cause and that, therefore, her subsequent orders in the case were invalid. *Id.* at 1069.

¶ 24 The issue in *Wilson* was whether a judge who is the subject of a petition for substitution for cause can determine whether the petition meets certain threshold procedural and substantive requirements before passing it to another judge for a determination on the merits. *Wilson*, 238 Ill. 2d at 522. In holding that the challenged judge can make that threshold determination, the court commented that any judge assessing a for-cause substitution petition will have a "powerful incentive to err on the side of caution" because, if a judge "den[ies] a petition for substitution under circumstances where the appellate court subsequently determines that the [request] should have been allowed, all of [the challenged judge's] subsequent rulings in the case will be

invalidated." *Id.* at 568. For this proposition, the court cited *Curtis v. Lofy*, 394 Ill. App. 3d 170 (2009), which held (like *C.M.A.*) that " '[o]rders entered after a motion for substitution of judge has been improperly denied are void.' " (*id.* at 176 (quoting *Illinois Licensed Beverage Ass'n v. Advanta Leasing Services*, 333 Ill. App. 3d 927, 932 (2002))).

¶ 25    The *Brzowski* court interpreted *Wilson* and *C.M.A.* as holding "that when a judge has been substituted for cause, the disqualified judge cannot enter any further orders in the case." *Brzowski*, 2014 IL App (3d) 130404, ¶ 19. The court recognized that, per *O'Brien*, "recusal and substitution for cause are not the same thing" (*O'Brien*, 2011 IL 109039, ¶ 45), but it maintained that, for purposes of its analysis, "the power of a judge who has been substituted for cause is similar to the power of a judge who has voluntarily recused herself" (*Brzowski*, 2014 IL App (3d) 130404, ¶ 19 n.1).

¶ 26    The court also found support in foreign authority, noting that "it is a generally accepted rule in both state and federal courts that once a judge recuses, that judge should have no further involvement in the case outside of certain ministerial acts." *Id.* ¶ 19. The court cited a federal case, *Moody v. Simmons*, 858 F.2d 137 (3d Cir. 1988), and a law review note collecting cases on the issue (S. Matthew Cook, Note, *Extending the Due Process Clause to Prevent a Previously Recused Judge from Later Attempting to Affect the Case from Which He Was Recused*, 1997 B.Y.U. L. Rev. 423 (1997)).

¶ 27    Based on these authorities, the *Brzowski* court concluded that, "when a judge is disqualified in a case, either by recusal or through a petition for substitution, that judge cannot enter any further orders in the matter." *Brzowski*, 2014 IL App (3d) 130404, ¶ 19. Specifically, the disqualified judge has no power to enter "substantive orders" in the case but may take only

"ministerial action." *Id.* ¶ 20. As there was no Rule 63(D) remittal in the record, the court vacated Judge Kennison's order extending the order of protection. *Id.*

¶ 28 Like the *Brzowski* court, we see no difference between the effects of a disqualification for cause under section 2-1001(a)(3) of the Code and the effects of a Rule 63 recusal. There is, in turn, no ground for distinguishing between the effects of a disqualification for cause and the effects of other types of disqualification for which section 2-1001 provides, namely disqualification because of the judge's involvement in the case (735 ILCS 5/2-1001(a)(1) (West 2016)) and disqualification as of right (*id.* § 2-1001(a)(2)). As to what powers, if any, are retained by a judge who is disqualified under section 2-1001 or recused under Rule 63, cases like *Wilson*, *C.M.A.*, and *Cofy* seem to imply that a judge who was (or should have been) disqualified for cause may make no further orders at all. However, other cases on statutory judicial substitution, civil or criminal (see 725 ILCS 5/114-5(a) (West 2016)), hold that a disqualified judge retains the power to perform ministerial functions (see *People ex rel. Walker v. Pate*, 53 Ill. 2d 485, 505 (1973)), such as entering orders necessary to transfer the matter to another judge (see *Hoffman v. Hoffman*, 40 Ill. 2d 344, 347-48 (1968); *People v. Bell*, 276 Ill. App. 3d 939, 946-47 (1995)). While *Brzowski* could have cited these decisions, it cited only a federal decision, *Moody*, in holding that a disqualified judge loses the power to enter "substantive orders" in the case. *Brzowski*, 2014 IL App (3d) 130404, ¶¶ 19-20.

¶ 29 From the foregoing authorities we derive the rule that a recused or otherwise disqualified judge has no power to enter further substantive orders in the case, absent—where applicable—a Rule 63(D) remittal.

¶ 30 Whether a disqualification is subject to reconsideration depends on the source of the disqualification. A recused judge cannot reconsider his recusal, for that would itself be a

substantive decision in excess of the residual powers of a recused judge. As the *Brzowski* court noted, both federal and state courts are divided on whether a recused judge may rescind his recusal. Compare *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 457-58 (5th Cir. 1996) (rule that "judges can do nothing after recusal other than transfer their case to another judge" precludes a recused judge from vacating his recusal), and *El Fenix de Puerto Rico v. M/Y JOHANNY*, 36 F.3d 136, 142 (1st Cir. 1994) (a judge's vacatur of his recusal "runs afoul of the general rule that the recused judge should take no further action except to enable administrative reassignment of the case"), with *United States v. Lauersen*, 345 F.3d 329, 338 (2d Cir. 2003) ("There is no reason to prohibit a judge from reconsidering a recusal decision, at least in the absence of transfer of the case to another judge."); compare *Luce v. Cushing*, 2004 VT 117, ¶ 16, 177 Vt. 600, 868 A.2d 672 (collecting cases and siding with those holding that "a judge may rescind a recusal where valid grounds appear on the record"), with *Kells v. Davidson*, 136 So. 450, 451 (Fla. 1931) ("It would be an unwise provision of law which would contemplate that, when a judge is once disqualified [(by recusal)] in a cause, the reason for his disqualification could be removed from the record, and thereupon such judge would become qualified to proceed with the disposition of the cause and act as though he had never been disqualified."); see W.W. Allen, Annotation, *Disqualification of Judge in Pending Case as Subject to Revocation or Removal*, 162 A.L.R. 641 (1946). In Illinois, the issue appears settled by the rule in *Wilson* and *C.M.A.*, as extended to recusals.

¶ 31 In contrast to a recusal, a for-cause disqualification is indeed subject to reconsideration. The difference is that a petition seeking a for-cause disqualification is decided by a different judge from the one named in the petition. See 735 ILCS 5/2-1001(a)(3)(iii) (West 2016). "The fact that a second judge will examine the for-cause allegations allows for an independent, neutral

assessment of the allegations against the challenged judge \*\*\*." *O'Brien*, 2011 IL 109039, ¶ 46. Reconsideration of a for-cause disqualification is not a substantive decision by the disqualified judge himself, though it could lead to reinstatement of that judge's authority to enter substantive decisions in the case.

¶ 32    While the well-established rule of *Wilson* and *C.M.A.* hardly needs justification at this point, we note that sound policy exists for barring a judge from reconsidering his recusal. First, we note the extent to which a decision on recusal is insulated from independent review. "Whether a judge should recuse himself is a decision in Illinois that rests *exclusively within the determination of the individual judge*, pursuant to the canons of judicial ethics found in the Judicial Code." (Emphasis in original.) *Id.* ¶ 45. "The Judicial Code, which is a part of our rules, says nothing that would give the impression that its provisions could be used by a party or his lawyer as a means to force a judge to recuse himself, once the judge does not do so on his own." *Id.* Rather, a party who wishes to compel a judge's removal from a civil case must use section 2-1001 of the Code. *Id.* ¶ 46; see also *In re S.D.*, 2011 IL App (3d) 110184, ¶¶ 25-26 ("Although attorneys may make the court aware of certain factors that could potentially require the trial judge to contemplate recusal, a party cannot compel a judge to step aside by 'moving' for recusal. If the parties are not satisfied with the court's ruling on an informal request for recusal, the parties may then file a motion for substitution under section 2-1001(a)(3) of [the Code] with the required affidavits in order to compel substitution in certain situations."). Thus, there is no independent review of a judge's refusal to recuse himself under Rule 63.

¶ 33    Moreover, if the personal nature of a recusal decision precludes independent review of a refusal to recuse, then it would seem also to bar review of a recusal itself. In fact, Rule 63 does not even require a judge to disclose the basis for his recusal, unless he chooses to offer the

parties the option of a remittal. See Ill. S. Ct. R. 63(D) (eff. Feb. 2, 2017) ("A judge disqualified by the terms of Section 3C *may* disclose on the record the basis of the judge's disqualification and *may* ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive disqualification." (Emphases added.)); *Hassebrock v. Deep Rock Energy Corp.*, 2015 IL App (5th) 140105, ¶ 51 ("Rule 63 does not mandate that a trial court state its reason for recusal on the record or in its recusal order, unless the court seeks a waiver of its disqualification.").[1]

¶ 34    The personal nature of a recusal militates not only against independent review but also, perhaps ironically, against reconsideration by the judge himself.   The criterion for recusal under Rule 63(C)(1) is whether the judge's impartiality might reasonably be questioned.  This includes, but is not limited to, situations involving the appearance of impropriety.  *O'Brien*, 2011 IL 109039, ¶ 43.   Factoring into the recusal decision of a conscientious judge (which all are presumed to be) is not only the judge's concern for appearances but also his subjective assessment of his attitudes and whether they will allow impartiality in that case.  Appearances can be assessed by others; the subjective component cannot.  When a judge recuses himself but then changes his mind, he might leave himself open to the charge that he is, at best, uncertain, or, at worst, dishonest, about his ability to remain impartial.  While some recusals might be based on sheer mistakes of fact, a bright-line rule is the best policy, and indeed the rule in *Wilson* and *C.M.A.* does not permit exceptions for disqualified judges to make substantive rulings.

¶ 35    In the present case, once Judge Salvi recused himself, he lost all authority to decide substantive matters, including—most notably—whether he should have recused himself after all. There being no Rule 63(D) remittal in the record, Judge Salvi was without authority to reinstate

---

[1] Judge Winter did not apply Rule 63 in determining whether Judge Salvi should remain on the case—nor, as our analysis demonstrates, did she have the authority to apply it.

himself to the case. Judge Winter, therefore, erred in denying the petition for substitution of Judge Salvi.

¶ 36                                    III. CONCLUSION

¶ 37    For the foregoing reasons, we reverse the denial of petitioner's petition for substitution of Judge Salvi. We also vacate all substantive rulings following Judge Salvi's recusal, including the dissolution judgment, and remand this case for reassignment to another trial judge for disposition.

¶ 38    Vacated and reversed.

¶ 39    Cause remanded with directions.