2022 IL App (1st) 211507

FIRST DISTRICT
SIXTH DIVISION
May 20, 2022

No. 1-21-1507

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| SHAWN A. CUMMINGS, | ) | Cook County |
| | ) | |
| Petitioner-Appellant, | ) | No. 2017 D 000909 |
| | ) | |
| and | ) | Honorable |
| | ) | Jeanne R. Cleveland-Bernstein, |
| ALMA CUMMINGS, | ) | Robert W. Johnson, and |
| | ) | Myron F. Mackoff, |
| Respondent-Appellee. | ) | Judges Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Oden Johnson concurred with the judgment and opinion.

## OPINION

¶ 1    Petitioner, Shawn A. Cummings, appeals the trial court's judgment denying his motion to vacate the dissolution of marriage judgment and the parties' agreement to allocate parental responsibilities. On appeal, Shawn contends that the trial court should have granted his motion where the judge who entered those judgments had earlier recused herself and, as a result, any orders subsequently entered by her are void. For the following reasons, we affirm.

¶ 2                                I. JURISDICTION

¶ 3    The trial court denied Shawn's motion to vacate on November 1, 2021. Shawn filed his notice of appeal on November 22, 2021. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

¶ 4                                    II. BACKGROUND

¶ 5      Shawn and Alma were married on June 30, 2012. Their son was born on January 9, 2016. On February 1, 2017, Shawn filed a petition for dissolution of marriage, and Alma subsequently filed a counter-petition for dissolution of marriage. The case was assigned to Judge Jeanne R. Cleveland-Bernstein (Judge Bernstein). By all accounts, the proceedings were contentious. The case was first set for trial in November 2020. Six days before the trial was to commence, Shawn dismissed his petition and the cause continued on Alma's counterpetition. Given the long history of litigation in this case, we set forth only those facts necessary for the resolution of the issues in this appeal.

¶ 6      On February 21, 2021, Shawn filed a petition for substitution of judge for cause. Therein, he alleged that the totality of Judge Bernstein's comments and statements were of such character that a neutral observer would question the judge's ability to "exercise fair judgment" in the case. According to the affidavit of Mr. Steven S. Russo, Shawn's counsel, Judge Bernstein repeatedly interrupted him using "vulgar and profane language" that was "unmistakably intended to intimidate, threaten, and silence" counsel. The petition alleged that Judge Bernstein "clearly, continually, and increasingly embarked on a course of conduct" that would deny Shawn a fair and impartial hearing.

¶ 7      Shawn's contentions regarding his petition for substitution of judge, as well as his contentions on appeal, primarily rely on court proceedings that took place from February 10, 2021, through February 22, 2021. However, the report of proceedings for those hearings are not in the record on appeal nor is there a bystander's report in lieu of the report of proceedings. Because we will need to refer to details of these proceedings, we set forth the following events as recounted by Mr. Russo and Ms. Kimberly Anderson (Alma's counsel) at the hearing on the petition.

¶ 8    Mr. Russo stated that at a hearing on February 10, 2021, Judge Bernstein announced that she was "sick of this case" and "I should recuse myself." She was "enraged" with Mr. Russo and suspended the Zoom conference to step away and compose herself. Mr. Russo had explained to her that he instructed Shawn not to appear at the hearing because he had medical issues and Mr. Russo felt that his appearance would not be necessary. The judge told Mr. Russo that she was "tired of your bulls***." Her tone of voice was "aggressive" and "intimidating" and "demonstrated that she had improper preconceptions about" Shawn and Mr. Russo.

¶ 9    At the Zoom conference on February 22, 2021, Mr. Russo informed Judge Bernstein that he was filing a petition for substitution of judge for cause. Judge Bernstein immediately interrupted him, "screaming" and telling him that "the whole purpose for cause is *ex parte* communications, which I have not had." Mr. Joseph Taconi, the guardian *ad litem* for Shawn and Alma's son, then inquired whether the trial dates would be stricken as a result. Judge Bernstein responded that it was not her case anymore and "I want every piece of paper on this case out of my chambers." She then terminated the Zoom conference.

¶ 10   Ms. Anderson explained that when Judge Bernstein was informed of the petition for substitution of judge, the trial had already been delayed four times. Each time Shawn failed to appear on the date set for trial, the judge continued the matter to another date over Ms. Anderson's objection. When the court ordered Shawn to appear on February 16, 2021, but he failed to do so, the judge was "angry." Ms. Anderson admitted to also bearing the brunt of her anger when "something wasn't done correctly." Judge Bernstein "demands that you appear, and you tell her the truth, and she doesn't feel like you are, yeah she was angry about it. But never once did she prejudge the case."

¶ 11    Judge Bernstein did step away to compose herself, and she did state that she should recuse herself. But when she returned, the proceedings resumed "like normal." The parties set another pretrial date for February 22, 2021. They had agreed that Alma and their son would relocate to Ireland, and they planned to work out a schedule on February 22. However, on February 21, 2021, Mr. Russo filed a petition for substitution of judge for cause. At the hearing on February 22, 2021, Judge Bernstein stated that "she was sick of this case." She also said the case was no longer hers and "goodbye," but she did not say she was recusing herself.

¶ 12    After the February 22 hearing, Judge Bernstein signed a form titled "ORDER REGARDING SUBSTITUTION OF JUDGE OR RECUSAL." The form order contained one box indicating that a petition for substitution of judge had been filed, and another box indicating that "the assigned judge *** recused himself/herself pursuant to Supreme Court Rule 63(c)." The box stating that a petition for substitution of judge for cause had been filed was checkmarked. That box further indicated the petition "has been granted" and the matter transferred for reassignment. The order stated that "every pleading and exhibit on Calendar 64 is hereby stricken." The box indicating that the judge was recusing herself was not checked.

¶ 13    Ms. Anderson was confused by the order because it seemed as if Judge Bernstein had granted the petition "against herself," which was not possible. She communicated with the clerks, and she copied Mr. Russo and Mr. Taconi on her communications. Judge Bernstein then entered another order for "Transfer, Assignment, and Reassignment." The order indicated that the cause was being assigned to the Presiding Judge for a hearing on the petition for substitution of judge for cause. It also provided that "Every Pleading & Exhibit on Calendar 64 is Hereby Stricken."

¶ 14    On February 26, 2021, Shawn filed a motion to clarify the court's orders of February 22, 2021. He argued that Judge Bernstein's first order indicated that the case was no longer hers and the trial dates were stricken. "[A]s a matter of law, the first Order entered is in full force and effect and the following purported 'orders' are void."

¶ 15    Shawn's petition for substitution of judge was assigned to Judge Robert Johnson. On March 4, 2021, Alma filed her response to Shawn's petition. In its March 9, 2021, order, the court stated that it had before it the matters of Shawn's motion to clarify and his petition for substitution of judge. The order continued the cause to March 16, 2021, for a hearing. On March 18, 2021, Judge Johnson entered an order denying the petition for substitution of judge for cause. He also ordered the case returned to Judge Bernstein. Shawn filed a motion to reconsider.

¶ 16    On March 22, 2021, while Shawn's motion to reconsider was pending, Judge Bernstein heard Alma's emergency motion regarding the sale of the marital home. The parties agreed on the realtor chosen to sell the house and the selling price. The parties also agreed on the allocation of parental responsibilities. The upcoming trial dates were confirmed, and Judge Bernstein stated she would "reinstate the pleadings that were stricken or remain unresolved." Her written order provided that "[t]he court order of February 22, 2021 wherein the order stated that 'every pleading and exhibit on Calendar 64 is hereby stricken' is vacated. This order reinstates all orders, pleadings, and exhibits previously filed or entered." On March 24, 2021, after a hearing, Judge Johnson denied Shawn's motion to reconsider.

¶ 17    On May 24, 2021, Judge Bernstein held a trial on financial issues incident to the divorce. Prior to trial, Mr. Russo presented an emergency motion to withdraw as Shawn's attorney because Shawn

had filed a petition for bankruptcy that, he argued, created a conflict between Shawn and Mr. Russo. The court noted that:

> "there have been nine continuances on behalf of Mr. Cummings, which has severely delayed this '17 case; and that the bankruptcy that he used as an excuse was filed last March, right? March? Does anybody know when he filed his bankruptcy?
>
> And that Mr. Russo knew about it and informed the court about it on the third day of trial. The trial proceedings were suspended, and they were reset for today; and Mr. Russo chose to wait for 65, 70 days to file an emergency on the third day of trial. The court gave it some consideration and denied his motion, and Mr. Russo decided that he would remove himself from the trial, leaving his client without representation. But that was against the advice of the court."

¶ 18    On June 3, 2021, the court entered an order stating that Mr. Russo's motion to withdraw was denied and the trial proceeded to completion. The order allowed the parties until June 25, 2021, to submit proposed judgments and continued the matter to August 2, 2021, for entry of the dissolution judgment. The dissolution judgment, however, was entered on July 1, 2021, and Shawn claimed he was not notified of the judgment until August 2, 2021. The judgment ordered Shawn to pay Alma a sum of $231,246.43 for adverse dissipation and various reimbursements. On August 19, 2021, Mr. Joseph Cardinal filed an additional appearance on Shawn's behalf.[1]

¶ 19    On September 1, 2021, Shawn filed a motion to vacate the allocation agreement and the dissolution judgment. He argued that Judge Bernstein's first February 22, 2021, order was a recusal

---

[1]On September 10, 2021, the court entered an order allowing Mr. Russo leave to withdraw as Shawn's counsel.

and therefore all subsequent orders she entered, including the allocation agreement and dissolution judgment, are void. Alma moved to strike Shawn's motion to vacate. Since Judge Bernstein had retired, the case was heard by Judge Myron F. Mackoff.

¶ 20    After a hearing, Judge Mackoff denied the motion to vacate and denied Alma's motion to strike the motion to vacate. He explained,

"[T]he problem with the motion to vacate is [it's] based on a faulty premise. The premise is that Judge Bernstein recused herself. And I find as a matter of both law and fact that she did not recuse herself.

I am looking at—specifically at what was marked as Exhibit A in what petitioner calls a recusal order. And it is actually titled, order regarding substitution of Judge or recusal. The top of the order is filled out where she sends the matter to the Presiding Judge for hearing on the petition for substitution of Judge for cause.

If you notice on this order there is a middle part that could have been filled out if the Judge was recusing herself that actually talks about recusal. ***

This portion of the February 22nd order was not filled out. If Judge Bernstein was going to recuse herself that is the portion that she would have filled out. So this is not a recusal order. It is only an order transferring the matter to the Presiding Judge for hearing on the substitution of Judge for cause matter given that a Judge cannot hear her own motion for substation as cause—for cause.

Furthermore, as another indication that Judge Bernstein was not recusing herself is that if she had recused herself, there would not have needed to [be] a hearing on the motion for substitution for cause. If she had recused herself then the issue on substitution for cause

would have been mute [*sic*], and we would not have had to expend judicial resources, and everybody's time and efforts on the hearing on the motion for substitution for cause.

\* \* \*

I am saying that the order entered on February 22nd, 2021, is clear that the Judge did not recuse herself, and that she only—that she only transferred it to the Presiding Judge for a hearing on a substitution of Judge for cause, which would not be necessary had she recused herself. The fact that she may have mentioned it at the hearing is irrelevant because the order itself says—and she did not mention—and again according to your own language, she said, I should recuse myself. Even assuming that is what she said that is not an actual, I am recusing myself. So that is—so the motion to vacate—the motion to vacate is denied."

¶ 21    Shawn filed this appeal.

¶ 22                              III. ANALYSIS

¶ 23    Shawn filed a motion to vacate the dissolution judgment and allocation agreement pursuant to section 2-1301 of the Code of Civil Procedure (Code), which allows the trial court to set aside any final order or judgment upon a motion filed within 30 days after entry thereof. 735 ILCS 5/2-1301(e) (West 2018). We review a trial court's denial of a section 2-1301 motion to vacate for an abuse of discretion. *Standard Bank & Trust Co. v. Madonia*, 2011 IL App (1st) 103516, ¶ 8. The trial court abuses its discretion when it "acts arbitrarily without the employment of conscientious judgment or if its decision exceeds the bounds of reason and ignores principles of law such that substantial prejudice has resulted." *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 941 (1999).

¶ 24    We first address Shawn's contention that his motion to clarify Judge Bernstein's February 22, 2021, orders was never heard. We note, however, that Judge Johnson's March 9, 2021, order stated

that Shawn's motion to clarify and his petition for substitution of judge were before the court. Shawn acknowledged at the hearing before Judge Johnson that Judge Bernstein's alleged recusal was the "substance of [his] motion to clarify." Shawn's counsel also used the alleged recusal as a basis for his petition for substitution of judge for cause. A review of the record shows that the parties extensively argued the recusal issue before Judge Johnson at the hearing. Judge Johnson took the matter under advisement and later denied Shawn's petition. While Judge Johnson did not explicitly state that he considered Shawn's motion to clarify, the record shows that he did consider whether Judge Bernstein recused herself, which was the "substance of [Shawn's] motion to clarify." By denying the petition, Judge Johnson clearly did not believe Judge Bernstein had recused herself from the case.

¶ 25    On appeal, Shawn reiterates his argument that Judge Bernstein recused herself from the case on February 22, 2021. He contends that without a waiver of her disqualification by the parties pursuant to Illinois Supreme Court Rule 63(D) (eff. Feb. 2, 2017), all subsequent orders entered by Judge Bernstein are void. As support, he cites *In re Marriage of Peradotti*, 2018 IL App (2d) 180247.

¶ 26    In *Peradotti*, the respondent was represented by the law firm of Beermann Pritikin Mirabelli Swerdlove LLP (the Beermann firm), and the case was assigned to Judge Joseph V. Salvi. Judge Salvi's nephew practiced matrimonial law in Lake County and joined the Beermann firm in January of 2017. *Id.* ¶ 5. A number of Judge Salvi's family members practiced law in Lake County, and he regularly recused himself from cases involving his family members. *Id.*

¶ 27    In court on February 10, 2017, Judge Salvi disclosed to the parties that his nephew was an associate with the Beermann firm. He recused himself and entered an order assigning the case to the Honorable Elizabeth Rochford. *Id.* Neither the order nor a report of the proceedings was in the record on appeal. Respondent's counsel objected, asking Judge Salvi to reconsider, and petitioner's attorney

objected to the objection. On February 22, 2017, the case came before Judge Salvi for pretrial. When petitioner's counsel raised the issue of his recusal, Judge Salvi responded that after researching the law and speaking to the chief judge, he was not obligated to recuse himself. *Id.*

¶ 28    On March 3, 2017, petitioner filed a petition to substitute Judge Salvi for cause. He questioned Judge Salvi's impartiality in the case due to his departure from his " 'long-standing history of *** recusing himself when cases involving his nephew's firm appear before his bench.' " *Id.* ¶ 6. The petition was assigned to Judge Diane E. Winter. At the hearing on the petition, the parties disagreed over whether Judge Salvi entered a recusal order on February 10, 2017, but they agreed that he had transferred the case to Judge Rochford. *Id.* ¶ 9. The circuit court docket entry for that date indicated no order was entered. *Id.* Judge Winter found the absence of an order " 'problematic,' " and denied the petition for substitution. *Id.* ¶ 11. After the case was returned to him, Judge Salvi presided over the trial. In December 2017, he issued a dissolution judgment that addressed matters such as parenting time and property distribution. *Id.* ¶ 13.

¶ 29    Although there was no record of the recusal order, nor a report of the proceedings for that day, the parties agreed that Judge Salvi had announced in court that he was recusing himself because of his nephew's employment with the Beermann firm. They also agreed that a few days later, Judge Salvi stated in court that he had consulted with the chief judge and decided to rescind his recusal. *Id.* ¶ 18. With these agreed-upon facts, the appellate court proceeded to address whether Judge Salvi had the authority under law to rescind his recusal.

¶ 30    The court referred to Rule 63, which addresses the disqualification of judges. Ill. S. Ct. R. 63 (eff. Feb. 2, 2017). It states that " '[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to' "

situations where " 'the judge ***, or a person within the third degree of relationship to [him] *** is acting as a lawyer in the proceeding.' " *Peradotti*, 2018 IL App (2d) 180247, ¶ 19 (quoting Ill. S. Ct. R. 63(C)(1)(e)(ii) (eff. Feb. 2, 2017)). The court noted that a judge's nephew is within the " 'third degree of relationship' " to him. *Id.*

¶ 31    The court determined that once a judge recuses himself pursuant to Rule 63, he "has no power to enter further substantive orders in the case, absent *** a Rule 63(D) remittal." *Id.* ¶ 29. It noted that the rule provides for a remittal process through which the parties may waive disqualification, and the agreement to waive disqualification " 'shall be incorporated in the record of the proceeding.' " *Id.* ¶ 19 (quoting Ill. S. Ct. R. 63(D) (eff. Feb. 2, 2017)). No such agreement was in the record. Therefore, once he had recused himself, Judge Salvi "lost all authority to decide substantive matters, including—most notably—whether he should have recused himself after all." *Id.* ¶ 35. Judge Winter had erred in denying the petition for substitution of judge for cause. *Id.*

¶ 32    In *Peradotti*, the judge recused himself pursuant to Rule 63 and several days later, upon reconsideration, rescinded the recusal. The applicability of *Peradotti* therefore depends on whether Judge Bernstein had recused herself from the case. Unlike the parties in *Peradotti*, Shawn and Alma do not agree that the judge recused herself from the case.

¶ 33    Our review of the record does not support recusal here. The parties agreed that Judge Bernstein stated she *should* recuse herself. She did not say she was going to recuse herself. In fact, subsequent events indicate that she did not recuse herself. It is unclear the exact date she made the statement because there is no report of the February 2021 proceedings in the record. The parties agree, however, that Judge Bernstein said she should recuse herself prior to the February 22, 2021, hearing, with Mr. Russo informing Judge Johnson that she made the statement at the February 10, 2021, hearing. Judge

Bernstein, however, did not enter any recusal or reassignment orders that day. Instead, she continued the matter at least two times. No one raised the issue of Judge Bernstein's alleged recusal during those proceedings.

¶ 34    On February 21, 2021, Shawn filed his petition for substitution of judge for cause. The petition did not mention recusal nor did the affidavits of Shawn and Mr. Russo claim that Judge Bernstein had recused herself from the case. The next day, Judge Bernstein entered two orders in response to the petition. The first indicated that a petition for substitution of judge for cause had been filed and the matter was transferred to the Chief Judge for reassignment. The order stated that "every pleading and exhibit on Calendar 64 is hereby stricken." The second order, titled "Transfer, Assignment, and Reassignment," confirmed that the cause was being assigned for a hearing on the petition. The petition was subsequently assigned to Judge Johnson for a hearing.

¶ 35    Judge Bernstein was thus presented with a petition for substitution for cause, and she entered two consistent orders addressing that petition. When Shawn filed his motion to clarify Judge Bernstein's orders, he argued that the first February 22, 2021, order granted his petition for substitution of judge for cause. He contended that after entry of the first order, the case was no longer her case and Judge Bernstein's other "purported orders" transferring the case for a hearing on the petition were void and unenforceable. At the time, Shawn did not argue that the first February 22, 2021, order reflected Judge Bernstein's recusal from the case.

¶ 36    Shawn now argues that Judge Bernstein's February 22, 2021, order stating that "every pleading and exhibit on Calendar 64 is hereby stricken" indicated her recusal. We disagree. Judge Bernstein may have believed that once the petition was brought, she no longer had authority to preside over the case. Indeed, some courts have found that "once a motion for substitution of judge for cause

is brought, that judge loses all power and authority over the case and any orders entered after a judge's removal or after an improper denial of such motion are of no force or effect." *In re Petition of C.M.A.*, 306 Ill. App. 3d 1061, 1067 (1999). Other courts, however, have determined that the filing of a petition for substitution "does not automatically void" final orders entered after the filing, and the party seeking to void the subsequent orders must instead "show the petition was improperly denied." *Deutsche Bank National Trust Co. v. Nichols*, 2013 IL App (1st) 120350, ¶ 16. The issue of a judge's authority to rule on substantive matters after a petition for substitution has been filed, but before the petition is heard, is not yet settled under Illinois law.[2] We raise this point to illustrate that the language in Judge Bernstein's order is consistent with her belief that she was disposing of a petition for substitution of judge for cause.

¶ 37     We find no evidence in the record to support that Judge Bernstein had recused herself from the case. Since Judge Bernstein did not recuse herself, *Peradotti* is not applicable as authority to vacate the parties' dissolution judgment and allocation agreement. Additionally, once Judge Johnson denied the petition for substitution of judge, the case was transferred back to Judge Bernstein. Judge Bernstein entered the dissolution judgment and the allocation agreement after the case was returned to her. Shawn has not cited any authority finding that when the petition for substitution has been denied and the case returned to the original judge that judge has no power to enter orders. While it is true that orders entered after a petition for substitution has been *improperly* denied will be invalidated (see *In re Estate of Wilson*, 238 Ill. 2d 519, 568 (2010)), we do not have such a case here. Judge

_____

[2]In *In re Estate of Wilson*, 238 Ill. 2d 519, 563 (2010), our supreme court held that when presented with a petition for substitution of judge, the trial judge could make an initial determination of whether the petition met the threshold statutory requirements set forth in section 2-1001(a)(3) of the Code (735 ILCS 5/2-1001(a)(3) (West 2006)), but it did not address whether the trial court could rule on other substantive matters.

Mackoff did not abuse his discretion in denying Shawn's motion to vacate.[3]

¶ 38   Finally, we address Alma's request for sanctions pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994), which provides sanctions for frivolous appeals that are not taken in good faith. For example, appeals intended to harass, or cause needless delay or litigation costs, are sanctionable against the party or his attorney. *Id.* The imposition of Rule 375(b) sanctions is left entirely to the discretion of the reviewing court. *Kheirkhahvash v. Baniassadi*, 407 Ill. App. 3d 171, 182 (2011). This court applies an objective standard to determine whether an appeal is frivolous, *i.e.*, would not have been brought in good faith by a reasonable, prudent attorney. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 87.

¶ 39   While we acknowledge the considerable delays over the course of these proceedings, we find that Shawn's appeal was not frivolous given Judge Bernstein's statements and the initial confusion over her first February 22, 2021, order. We choose to exercise prudence so as not to "discourage attorneys from zealously representing their clients or from bringing appeals that have even arguable merit." *First Federal Savings Bank of Proviso Township v. Drovers National Bank of Chicago*, 237 Ill. App. 3d 340, 347 (1992). We therefore deny Alma's request for Rule 375(b) sanctions.

¶ 40                                    IV. CONCLUSION

¶ 41   For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 42   Affirmed.

---

[3]The recusal issue is the only issue Shawn raises on appeal. He does not challenge, on the merits, Judge Johnson's denial of his petition for substitution of judge for cause. He has therefore forfeited review of that issue. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (stating that "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing").

---

**No. 1-21-1507**

---

| | |
|---|---|
| **Cite as:** | *In re Marriage of Cummings*, 2022 IL App (1st) 211507 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2017-D-000909; the Hon. Jeanne R. Cleveland-Bernstein, the Hon. Robert W. Johnson, and the Hon. Myron F. Mackoff, Judges, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael G. DiDomenico, of Lake Toback DiDomenico, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Annette M. Fernholz, of Chicago, for appellee. |

---