2024 IL App (2d) 230061-U
No. 2-23-0061
Order filed May 1, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-2309 |
| MICHAEL S. MAIN, | ) ) ) | Honorable James K. Booras, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*:   (1) The trial court was not required to *sua sponte* recuse itself from the defendant's trial or posttrial proceedings; (2) trial court conducted a sufficient inquiry into the defendant's sixth and seventh *Krankel* motions; and (3) one of the defendant's convictions from criminal sexual assault must be vacated for violating the one-act, one-crime rule.

¶ 2   Following a jury trial, the defendant, Michael Main, was convicted of 6 counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40 (a)(1) (West 2016)) and 11 counts of criminal sexual assault (*id.* § 5/11-1.20(a)(3)).  The circuit court of Lake County sentenced him to a total of 120 years' imprisonment.  On appeal, the defendant argues that (1) the trial court erred

in not *sua sponte* recusing itself from the trial; (2) the trial court erred in not *sua sponte* recusing itself from the posttrial proceedings; (3) the trial court erred in not conducting an inquiry into his sixth and seventh *Krankel* motions alleging ineffective assistance of counsel and (4) the evidence was insufficient to convict him on one of the counts of the indictment. We affirm in part and vacate in part.

¶ 3                                                  I. BACKGROUND

¶ 4      On September 21, 2016, the defendant was charged by indictment with 6 counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40 (a)(1) (West 2016)) and 11 counts of criminal sexual assault (*id.* § 5/11-1.20(a)(3)). All the charges alleged that the defendant committed various acts of criminal sexual assault against his daughter, who was between 9 and 15 years old when the alleged assaults occurred, between April 4, 2010, and July 26, 2016.

¶ 5      On November 7, 2016, attorney Jed Stone entered his appearance as the defendant's counsel.

¶ 6      On October 15, 2019, Stone filed a motion to withdraw as counsel. That motion alleged that an unspecified "inescapable and irreversible conflict" had arisen between Stone and the defendant, and all efforts to resolve the conflict had failed.

¶ 7      On October 16, 2019, the trial court conducted a hearing on Stone's motion. Stone indicated that the conflict between himself and the defendant had become apparent "over the past several months" and involved the defendant's "right to testify, what he would say if he testified, what defenses should be proffered, and whether this case should go to trial." After the State objected, the following colloquy ensued:

> "MR. STONE: I will be happy to explain in more detail if the Court needs me to, but I would like to do that in chambers and *ex parte*.

THE COURT:  I need to hear from the defendant first, and then I can accommodate that if that's something embarrassing or something to that effect.

MR. STONE:  I don't think it's embarrassing, I think it involves a confidence given to me by my client --

THE COURT: Okay.

MR. STONE:-- that creates a conflict that I don't want to share with the people who are in the written pleading."

¶ 8    The trial court then asked the defendant about Stone's request.  The defendant objected to Stone's motion, stating that he had paid Stone $30,000 and that he expected Stone to "handle this case to completion."  The defendant said that he was unaware of any conflict between himself and Stone.  He also indicated that he would be unable to afford another attorney after having paid Stone's retainer.

¶ 9    In response, Stone stated:

"This case is about a child who will come to court and say that her dad had a sexual relationship with her for many years while she was about nine until she was about fifteen. If that child is believed, then all of the chipping around the edges to this case won't make any difference.  If that child is disbelieved, [the defendant] will win his freedom.  I've evaluated the case, evaluated the evidence, offered the defendant my advice.  He has rejected that advice.  I don't know what else to do.

I owe a duty of candor to the Court as well as keeping my client's secrets.  Those may come in conflict if there is a trial.

[The defendant] has a right to testify.  If he testifies, I cannot put him on if he says what I think he is going to say.  The law prohibits that.  Justice Rehnquist has recommended

in situations like that I simply introduce him to a jury and sit down and let him tell his story. I think this is a recipe of disaster. I am deeply concerned about a man who describes himself as a good father, is taking a course of conduct that is self-destructive and destructive of children, and I don't want to be any part of it."

¶ 10 The trial court thereafter recessed the case and announced he would "see counsel in chambers, and examine what Mr. Stone has to say *in camera* and review it *in camera*[.]" The defendant asked to attend the *in camera* meeting, but the trial court refused, stating that he would give the defendant an "opportunity to respond *** if need be."

¶ 11 On October 17, 2019, the trial court and Stone summarized the in-chambers meeting:

"MR. STONE: We had a meeting in chambers yesterday off the record. I told the Court there and I will spread of record today that this motion did not come lightly, came after a great deal of thought; and after consultation with two respected criminal defense ethics persons, one Professor Richard Kling, and the other former director commissioner of the Attorney Registration Disciplinary Commission, Mary Robinson, who herself was a criminal lawyer and Appellate Defender.

After consulting with both of them, I came to the conclusion that I had to ethically file this motion. I am asking the Court to enter an order permitting me to withdraw as [the defendant's] counsel.

THE COURT: Mr. Stone related, maybe not in great detail, the nature of the conflict and in view of the fact that there are ethical considerations here and I do recognize them and they are present, they are vivid so to speak, I have no other choice but to permit Mr. Stone to withdraw."

¶ 12    The defendant objected to Stone withdrawing, again complaining that Stone was only willing to refund a small portion of his retainer and had not told him about an alleged conflict until recently.  The trial court told the defendant:

"Mr. Stone was trying to get you in colloquial terms a deal; and when he saw that this matter is going to trial and when you told him you will take the stand he *** found himself in a great conflict.  That's what he related to me."

¶ 13    Less than a month later, the trial court appointed the Public Defender to represent the defendant.

¶ 14    On June 8, 2022, the defendant filed a *pro se* motion seeking a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984).  The defendant alleged that his counsel was ineffective for failing to file a motion to dismiss the indictment under the Speedy Trial Act.  After conducting an inquiry, the trial court declined to appoint new counsel.

¶ 15    Between July 18, 2022, and July 21, 2022, the trial court conducted a jury trial on the 17 charges against the defendant.  The victim testified that she was born in 2001.  The defendant sexually assaulted her over a 5-year-period, beginning when she was 10 years old.  (Although the indictment alleged that the assaults began when she was 9 years old, the victim testified that it was when she was 10).  At the close of the trial, the jury found the defendant guilty of all the charges.

¶ 16    On August 19, 2022, the defendant filed a post-trial motion alleging that his counsel was ineffective for failing to file a motion to dismiss under the Speedy Trial Act.  The defendant also raised other claims of ineffective assistance, but asserted those claims required that he have access to the record and transcripts.  On that same day, defense counsel also filed a motion for a new trial.

¶ 17    On October 11, 2022, the trial court conducted an inquiry into the defendant's claims of ineffective assistance.  The defendant argued exclusively that his speedy trial issue was viable and

should be raised by new counsel. Defense counsel responded that there was no viable argument under the Speedy Trial Act. The trial court declined to appoint new counsel.

¶ 18 On October 18, 2022, defense counsel filed a supplemental motion for a new trial. That motion raised an additional claim that the trial court had violated the defendant's right to counsel of choice when he granted Stone's motion to withdraw based on Stone's off-record representations during the in-chambers meeting.

¶ 19 On October 20, 2022, the defendant filed two more *pro se* motions, labeled "*Krankel* #4 Motion in Support of *Krankel* #3 Motion to Dismiss" and "*Krankel* #5." The "*Krankel* #4 Motion" asserted, among other things, that the trial court denied him due process by holding an in-chambers meeting with Stone outside of his presence. The defendant alleged that trial counsel was ineffective for failing to raise that claim in her motion for a new trial. In the "*Krankel* #5" motion, the defendant alleged that the trial court did not conduct proper inquiries into his previous motions alleging ineffective assistance of counsel.

¶ 20 On October 26, 2022, the defendant filed a "Supplemental Motion Alleging Ineffectiveness of Counsel," asserting that Stone rendered ineffective assistance by failing to consult with him before withdrawing from the case. Later that day, the trial court allowed the defendant to address his new *pro se* motions. After listening to his arguments, the trial court found that the defendant was not raising any new issues that required a *Krankel* hearing and moved on to defense counsel's posttrial motion.

¶ 21 Defense counsel argued the claims in her original posttrial motion. She then turned to her supplemental claim that the trial court had deprived the defendant of his counsel of choice. She argued that Stone had rendered ineffective assistance of counsel by withdrawing from the case without informing the defendant or stating on the record the basis of his conflict with the defendant.

Counsel requested that the trial court conduct an inquiry into that claim pursuant to *Krankel*. The trial court agreed and announced it would conduct a *Krankel* hearing with the defendant and Stone.

¶ 22    At that hearing, the trial court told the defendant to present his claim. The defendant then argued that Stone did not have a legitimate conflict of interest that would have justified his withdrawal from the case. The defendant complained that he was denied representation during Stone's in-chambers meeting with the trial court because Stone was not representing his interests at that time. In response, Stone explained that his motion to withdraw was "consistent with Supreme Court rules and consistent with [his] obligation to be bound to keep confidential facts that would constitute an explanation for withdrawing." Following Stone's explanation, the trial court stated that "I do not find there is a *Krankel* issue in this case."

¶ 23    On November 18, 2022, following a hearing, the trial court sentenced the defendant to 126 years' imprisonment. This consisted of 6 consecutive 10-year sentences for the predatory criminal sexual assault charges and 11 consecutive 6-year sentences for the criminal sexual assault charges.

¶ 24    Defense counsel thereafter filed a motion to reconsider, arguing that the 126-year aggregate term sentenced exceeded the amount allowed by law. While this motion was pending, the defendant filed two *pro se* motions labeled "*Krankel* Issues 11/18/22 (#6)" and "*Krankel* Motion #7." Both motions raised numerous claims of ineffective assistance of counsel, including that defense counsel ineffectively advocated for him during the sentencing hearing.

¶ 25    At a status hearing regarding defense counsel's motion to reconsider sentence, defense counsel noted that the defendant was in prison, and requested that he be brought to court for a hearing on the motion. Defense counsel argued that the defendant needed to be present for the trial court to conduct a *Krankel* inquiry into his new claims of ineffective assistance of counsel. The trial court denied defense counsel's request, stating:

"I don't think *** there is a *Krankel* issue here.

* * *

I find that any motions by the defendant appear to be dilatory in nature and his presence here will be frustrating to the process."

¶ 26　On February 15, 2023, following a hearing on the defendant's motion to reconsider sentence, the trial court reduced the sentence on each of the predatory sexual assault charges to 9 years' imprisonment, which had the effect of lowering the defendant's aggregate sentence to 120 years' imprisonment.

¶ 27　The defendant thereafter filed a timely notice of appeal.

¶ 28　　　　　　　　　　　　　　　II. ANALYSIS

¶ 29　The defendant's first argument on appeal is that the trial court erred in not *sua sponte* recusing itself from the case pursuant to Supreme Court Rule 63(C)(1) (eff. April 16, 2007). The defendant asserts that the trial court created the appearance of impropriety when it conducted an in-chambers meeting with defense counsel to discuss a confidence the defendant had given him. Based on this appearance of impropriety, the defendant insists that he should receive a new trial before a different judge.

¶ 30　The defendant concedes that this issue was not timely raised before the trial court, and therefore is forfeited. The defendant argues, however, that the error is reviewable under the plain-error rule. See 134 Ill.2d R. 615(a) (eff. Jan. 1, 1967). The plain-error doctrine is a narrow and limited exception. *People v. Bannister*, 232 Ill. 2d 52, 65 (2008). To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). If the defendant demonstrates that an error occurred, he then has the burden of persuasion to establish that (1) the evidence is closely balanced; or (2) the error is so serious

that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *People v. McIntyre*, 2022 IL App (2d) 200535, ¶ 7.

¶ 31    We, therefore, first consider whether the trial court committed a clear or obvious error in not *sua sponte* recusing itself after having an *ex parte* meeting with defense counsel. As relevant to this case, the applicable version of Illinois Supreme Court Rule 63(C)(1)(a) imposed an ethical obligation on every judge to disqualify himself or herself in a proceeding when the court's impartiality may be in question. Ill. S. Ct. R. 63(C) (eff. April 16, 2007). That rule provided:

> "(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
>
> (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding." Ill. S. Ct. R. 63(C) (eff. Apr.16, 2007).

¶ 32    Whether a judge should recuse himself is a decision that rests exclusively within the determination of the individual judge pursuant to the canons of judicial ethics found in the Judicial Code. *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 45. The Judicial Code provides no basis for a party or his lawyer to force a judge to recuse himself once the judge does not do so on his own. *Id.* In reviewing a trial court's recusal decision, our standard of review depends upon whether the defendant formally requested that the trial court recuse. If he did, then we will consider whether the trial court abused its discretion in denying that request based on its reasons stated on the record. *People v. Hinthorn*, 2019 IL App (4th) 160818, ¶ 63. If the defendant did not ask the trial court to recuse, then the trial court's decision not to recuse is not subject to any review at all. *In re Marriage of Peradotti*, 2018 IL App (2d) 180247, ¶ 32; *People v. Klein*, 2015 IL App (3d) 130052, ¶ 84. This is because reviewing a trial court's *sua sponte* decision not to recuse from a case would

require us to review the trial court judge's "subjective assessment of his attitudes and whether they will allow impartiality in that case," something we simply cannot do. *Peradotti*, 2018 IL App (2d) 180247, ¶ 34.

¶ 33     Here, as the trial court's determination of whether it should recuse was a matter for it to exclusively decide, its decision not to cannot be considered error. *Id.*   Absent any error, the defendant's plain error argument necessarily fails. *Piatkowski*, 225 Ill. 2d at 565 (2007).

¶ 34     The defendant's authority in support of his argument is inapposite.  Neither of those cases involved a trial court's recusal decision. See *In re Marriage of Wheatley*, 297 Ill. App. 3d 854, 856-58 (1998) (husband filed motion to vacate judgment after trial judge disclosed after trial that he had received an *ex parte* letter urging him to rule in the wife's favor) and *People v. Bradshaw*, 171 Ill.App.3d 971, 975 (1988) (defendant filed motion for substitution for cause after victim's mother had *ex parte* meeting with trial judge in his chambers).  Rather, they are consistent with the principle that if a party is concerned that the trial judge is biased against him, he should file a motion for substitution to be reviewed by a different trial court judge. See *Peradotti*, 2018 IL App (2d) 180247, ¶ 32; *Klein*, 2015 IL App (3d) 130052, ¶ 84.

¶ 35     The defendant's second contention on appeal is that the trial court should have *sua sponte* recused itself from a hearing on the defendant's posttrial motion where he alleged that the trial court had an improper off-the-record meeting with defense counsel.  In that motion the defendant did not ask for a substitution of judge or for the trial court to recuse.  As we have already explained that the trial court's subjective decision not to *sua sponte* recuse is not subject to independent review (*Peradotti*, 2018 IL App (2d) 180247, ¶ 32), the defendant's contention is without merit.

¶ 36     In so ruling, we find the defendant's reliance on *People v. Washington*, 38 Ill. 2d 446, 451 (1967) and *People v. Wilson*, 37 Ill. 2d 617, 621 (1967) to be misplaced.  Both of those cases

involved postconviction petitions that alleged that the trial court improperly induced the defendant to plead guilty. Neither of those cases discussed whether a trial court had a duty to *sua sponte* recuse.

¶ 37    The defendant's third contention is that the trial court erred in not conducting a preliminary *Krankel* inquiry into his sixth and seventh "*Krankel*" filings. He therefore argues that the case should be remanded for a proper inquiry into those filings.

¶ 38    When a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel, the trial court must conduct a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny to determine whether to appoint new counsel to assist the defendant with his claim. *People v. Patrick*, 2011 IL 111666, ¶ 29. The defendant is not automatically entitled to the appointment of new counsel. *Id.*, ¶ 32. Rather,

> "when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003).

¶ 39    "[A] trial court may consider both the facts and legal merits of a defendant's *pro se* posttrial allegations of ineffective assistance of counsel at the preliminary inquiry stage." *People v. Roddis*, 2020 IL 124353, ¶ 70. At a preliminary *Krankel* inquiry, the court may discuss the defendant's allegations with both the defendant and trial counsel. *Moore*, 207 Ill. 2d at 78-79. The trial court may conduct a preliminary examination by: (1) questioning trial counsel about the facts and circumstances surrounding the defendant's allegations; (2) requesting more specific information

from the defendant; or (3) relying on its own knowledge of counsel's performance at trial and any insufficiency of the defendant's allegations on their face. *Id.* at 78. We review *de novo* whether the trial court properly conducted a *Krankel* inquiry. *People v. Jackson*, 2020 IL 124112, ¶ 98.

¶ 40 Here, defense counsel discussed the defendant's sixth and seventh *Krankel* motions with the trial court and enumerated the new issues that had been raised. Specifically, the defendant asserted that those new issues were that defense counsel (1) did not tell him that any statement he made in allocution could be used against him on retrial; and (2) failed to introduce evidence in mitigation showing that the disciplinary actions taken against the defendant by the jail, which were noted in the presentence investigation report, were for minor infractions, such as possessing a small pencil for his legal work. In response, the trial court explained that it did not believe that there was a *Krankel* issue and that the defendant's motive in filing his motions was just to delay the proceedings.

¶ 41 We note that the trial court is presumed to know the law. *People v. Phillips*, 392 Ill. App. 3d 243, 265 (2009) ("a trial court is presumed to know the law and apply it properly"). The trial court's reference to *Krankel* indicates that it was aware of its obligation to conduct a preliminary inquiry into the defendant's allegations of ineffective assistance of counsel. Its determination that there was not a *Krankel* issue demonstrates that it considered the defendant's sixth and seventh *Krankel* motions and found them to be insufficient on their face. We cannot say the trial court's conclusion was erroneous. The new allegations the defendant raised were not significant. Since the trial court did not grant the defendant a new trial, the defendant's concerns about how his statement in allocution would be used against him on retrial are nothing more than hypothetical. Further, as the trial court was the one to impose sentence, it was in the best position to determine whether its sentence would be impacted if it knew that the prison discipline the defendant had

received was only for a minor infraction. The trial court's denial of the defendant's request for *Krankel* relief reflects its determination that its sentencing decision would not have been affected.

¶ 42    As noted above, the trial court is not obligated to conduct a lengthy inquiry where it finds that the defendant's allegations are without merit. See *Moore*, 207 Ill. 2d at 78. Based on our review of the record, we cannot say that the trial court erred in not conducting a lengthier investigation into the defendant's allegations of ineffective assistance of counsel.

¶ 43    The defendant insists that he is not limited to one *Krankel* motion and that the trial court must consider each such motion he files. We do not disagree with that principle. See *People v. Horman*, 2018 IL App (3d) 160423, ¶ 26 (trial court is obligated to hold a successive *Krankel* inquiry into defendant's new claims of ineffective assistance of counsel). However, in each subsequent *Krankel* motion he raises, the defendant must still raise new issues of substance. *Id.* His failure to do so may show that his motions are nothing more than an attempt to thwart the prompt administration of justice. The trial court is not required to countenance such dilatory tactics. See *People v. Staple*, 402 Ill. App. 3d 1098, 1103 (2010) (defendant cannot use his sixth amendment rights to thwart the administration of justice or to otherwise impede the effective prosecution of a crime).

¶ 44    Further, we find the defendant's reliance on *People v. Roberson*, 2021 IL App (3d) 190212, ¶ 19, *People v. Reveles-Cordova*, 2019 IL App (3d) 160418, ¶ 61, and *Horman* to be misplaced. In none of those cases did the trial court cite *Krankel* in denying the defendant's request for *Krankel*-type relief. *Roberson*, 2021 IL App (3d) 190212, ¶ 7 (court construed defendant's comments as raising no objection to counsel's continued representation and thus did not conduct any *Krankel* inquiry); *Reveles-Cordova*, 2019 IL App (3d) 160418, ¶ 28 (trial court refused to hear defendant's claims); *Horman*, 2018 IL App (3d) 160423, ¶ 12 (trial court did nothing more than

acknowledge it had read some (but not all) of the letters the defendant had sent alleging ineffective assistance of counsel).

¶ 45    The defendant's final contention on appeal is that one of his convictions for criminal sexual assault must be vacated under one-act, one-crime principles. The defendant argues that he was convicted of three separate counts of criminal sexual assault involving penetration of the victim's sex organ with an object. However, at trial, the victim only described two occasions on which the defendant committed that act of penetration.

¶ 46    Under the one-act, one-crime rule, a defendant may not be convicted of more than one offense "carved from the same physical act." *People v. King*, 66 Ill. 2d 551, 566 (1977). In this context, "act" means "any overt or outward manifestation which will support a different offense." *Id.* We first determine whether the defendant's conduct consisted of a single physical act or separate acts. *People v. Coats*, 2018 IL 121926, ¶ 12. Multiple convictions are improper if they are based on precisely the same physical act. If, however, the defendant's conduct is based on more than one physical act, we proceed to the second step—determining whether any of the offenses are lesser included offenses. *Id.* If not, then multiple convictions are proper. *Id.* Whether a violation of the rule has occurred is a question of law, which we review *de novo*. *Id.*

¶ 47    At trial, the State argued that the defendant touched the victim's vagina with a vibrator on three different days. On appeal, the State abandons that argument. Instead, it points to the victim's testimony that the defendant assaulted her with a vibrator on two different occasions and that on one of those occasions the defendant touched both her clitoris and her vagina. The State therefore insists that the victim's testimony supports the jury's findings that the defendant committed three separate acts of criminal sexual assault with an object.

¶ 48    In response to the State's argument, the defendant insists that, pursuant to *People v. Crespo*, 203 Ill. 2d 335, 344 (2001), we must reject the State's new basis to affirm because the State is not allowed to change its theory of the case on appeal. We agree. In *Crespo*, the defendant was charged with armed violence and aggravated battery based on an incident during which he stabbed the victim three times in rapid succession. *Id.* at 340. In the trial court, the State presented its charges as different legal theories concerning a single stabbing incident. *Id.* at 342. On appeal, however, the State argued that each time the defendant stabbed the victim constituted a separate act that could support a separate conviction. *Id.* The supreme court rejected the State's attempt to change its theory of guilt on appeal. *Id.* The supreme court explained that although the three individual acts of stabbing performed in rapid succession could support three separate convictions, it would be "profoundly unfair" to allow the State to apportion the individual acts of stabbing for the first time on appeal. *Id.* The supreme court therefore held that because the State had treated the entire stabbing incident as a single act at trial, it could not argue on appeal that it was a series of multiple acts. *Id.* at 344.

¶ 49    Here, as in *Crespo*, the State's request that we affirm the jury's verdict as to all three counts of criminal sexual based on a theory it did not present to the jury is prohibited as being profoundly unfair. *Id.* at 343; see also *People v. Castleberry*, 2015 IL 116916, ¶ 22 (State, as appellee, may only raise an argument of record in support of the trial court's judgment). As the record does not support the State's argument at trial that the defendant criminally sexually assaulted the victim with an object on three different days, we must vacate one of his convictions for that offense. Accordingly, as the defendant requests, we vacate his conviction for count XIII.

¶ 50                                III. CONCLUSION

¶ 51    For the foregoing reasons, we vacate the defendant's conviction on count XIII.  The remainder of the trial court's judgment is affirmed.

¶ 52    Affirmed in part; vacated in part.